**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gloria Elba Lopez, | No. CV-25-00473-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Auto-Owners Insurance Company, | |
| Defendant. | |

Defendant Auto-Owners Insurance Company has moved to dismiss certain claims in Plaintiff's Complaint related to the stacking of underinsured motorist ("UIM") limits under Federal Rule of Civil Procedure 12(b)(6). (Doc. 9). The matter is fully briefed. (Docs. 10–11). The Court will grant Defendant's Motion for the following reasons.

**I.   Background[1]**

A non-party t-boned Plaintiff after failing to stop at a stop sign. (Doc. 1-1 at ¶ 14). The non-party's insurance paid Plaintiff under the single person limits her policy dictated, but they were underinsured and did not pay all of Plaintiff's injuries and damages. (*Id*. at ¶¶ 15–17). Defendant issued an Insurance Policy to Plaintiff Gloria Lopez ("Plaintiff") for four different vehicles which provides a limit of $100,000 for each person and $300,000 each accident, for, respectively, bodily injury liability, uninsured motorist and underinsured motorist ("the Policy"). (*Id*. at ¶ 21). Plaintiff states that Arizona law

---

[1] Unless otherwise indicated, these facts are taken from Plaintiff's Complaint (Doc. 1-1). When evaluating a motion to dismiss, the court "accept[s] as true the well-pleaded factual allegations in the complaint." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (citation omitted).

allows for these policies to be stacked, so, her available coverage should be $400,000.00 under the Policy. (Doc. 1-1 at ¶¶ 22–24).

Plaintiff states that she filed a UIM claim with Defendant, and that almost a year later, she sent them a demand letter showing she had medical bills of $48,218.00 and would incur future medical costs of $32,072.00. (*Id*. at ¶¶ 26–28). Defendant provided $25,000.00 for her damages. (*Id*. at ¶ 30). Because of this "de facto denial of coverage," Plaintiff brings the following claims against Defendant: (1) Declaratory Relief under A.R.S. § 12-1831 that she is entitled to UIM proceeds under the policy; (2) Breach of Contract; and (3) Breach of the Covenant of Good Faith and Fair Dealing. (Doc. 1-1 at ¶¶ 45–70). Defendant argues that Plaintiff "is not entitled to stack the UIM limits of the Policy and is entitled to a maximum of only one (1) UIM limit in the amount of $100,000 with regard to this claim." (Doc. 9 at 7). It therefore seeks to dismiss Count One and "any portion of Count Two that relates to the stacking of UIM limits."[2] (*Id*.)

The Policies UIM coverage states, in pertinent part:

**2.    COVERAGE**

**a. We** will pay compensatory damages, including but not limited to loss of consortium, any person is legally entitled to recover from the owner or operator of an **underinsured automobile** because of **bodily injury** sustained by an injured person while **occupying an automobile** that is covered by **SECTION** II - **LIABILITY COVERAGE** of the policy.

**b.** This coverage is extended to **you,** if an individual, as follows:
**(1) We** will pay compensatory damages, including but not limited to loss of consortium, **you** are legally entitled to recover from the owner or operator of any **underinsured automobile** because of **bodily injury you** sustain:

---

[2] The Court notes that Defendant does not clearly assert what part of Count Two it seeks to dismiss. (*See* Doc. 9 at 7). Instead, it leaves this work for the Court to do. Normally, Courts are not required to "hunt down arguments [defendants] keep camouflaged nor [are they] required to address perfunctory and undeveloped arguments." *Wright v. Old Gringo Inc*., 2018 WL 6788215, at *3 (S.D. Cal. Dec. 26, 2018) (citation omitted). The Court understands the gist of Defendant's argument, so it cannot be said to rise to the level of being "too undeveloped to be capable of assessment[.]" *Hibbs v. Dep't of Human Resources*, 273 F.3d 844, 873 n.34 (9th Cir. 2001). So, the Court will address Defendant's argument; however, it admonishes Defendant's lack of specificity here and encourages it to be more specific in the relief it requests in the future.

> **(a)** when **you** are **occupying an automobile** that is not covered by **SECTION** II - **LIABILITY COVERAGE** of the policy; or
> **(b)** when **you** are not **occupying** any **automobile.**
>
> . . .

**4.     LIMIT OF LIABILITY**

> **a.**     **Our** Limit of Liability for Underinsured Motorist Coverage shall not exceed the lowest of:
>
> (1) The Limit of Liability stated in the Declarations for Underinsured Motorist Coverage as follows:
>
> (a) The limit stated for "each person" is the amount of coverage and the most **we** will pay for all compensatory damages, including but not limited to loss of consortium, because of or arising out of **bodily injury** to one person in any one **occurrence;**
>
> (b) The limit stated for "each occurrence" is the total amount of coverage and the most **we** will pay, subject to **4.a.(1)(a)** above, for all compensatory damages, including but not limited to loss of consortium, because of or arising out of **bodily injury** to two or more persons in any one **occurrence;** or
>
> (2) The amount by which compensatory dam- ages, including but not limited to loss of consortium, sustained exceed the total applicable limits of liability of all liability bonds or policies of the driver or owner of any **underinsured automobile.**
>
> **b.** The Limit of Liability is not increased because of the number of:
>
> (1) **automobiles** shown or premiums charged in the Declarations;
> (2) claims made or **suits** brought;
> (3) persons injured; or
> (4) **automobiles** involved in the **occurrence.**
>
> **c.** The amount **we** pay will not duplicate any amounts paid or payable for the same **bodily injury:**
>
> (1) under **SECTION** II - **LIABILITY COVERAGE** of the policy;
>
> (2) under Uninsured Motorist Coverage, if pro- vided by the policy;
> (3) by or on behalf of any person or organization who may be legally responsible for the **bodily injury;** or
> (4) under Automobile Medical Payments coverage, if provided by the policy.

**5.     OTHER UNDERINSURED MOTORIST COVERAGE**

> If there is other Underinsured Motorist Coverage which applies, **we** will pay **our** share of the compensatory damages, including but not limited to loss of

>consortium. **Our** share will be the ratio of **our** limit of liability to the total of all limits which apply. However, if **you** have purchased, from **us** or a company affiliated with **us,** other policies or coverages on other **automobiles** that also apply to a claim for injury, only one policy or coverage including this policy or coverage shall apply to that claim. **You** shall select the policy or coverage that applies. The coverage extended to **automobiles you** do not own will be excess over any other coverage available to **you.**

(Doc. 9-1 at 33–34) (emphasis in original).

## II.     Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) requires the Court to evaluate the legal sufficiency of a plaintiff's claims. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). This test requires that the plaintiff present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" with "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557. The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. If the court dismisses a claim for failure to state a claim, it must then determine whether to grant leave

to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

The court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908. A document is considered incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *Id*. If the court dismisses a claim for failure to state a claim, it must then determine whether to grant leave to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

### III.   Discussion

Defendant argues that Plaintiff "is not entitled to stack the UIM limits of the Policy and is entitled to a maximum of only one (1) UIM limit in the amount of $100,000 with regard to this claim." (Doc. 9 at 7). It therefore seeks to dismiss Count One and any portion of Count Two that relates to the stacking of UIM limits. (*Id*.)

Arizona's Uninsured ("UI")/Underinsured Motorist Act ("UMA") "mandates that an insurer offer [UI/UIM] coverage for every automobile liability policy issued to an Arizona insured." *Jackson v. Nationwide Mut. Ins. Co*., 265 P.3d 379, 382 (Ariz. Ct. App. 2011). "The UMA—found at A.R.S. § 20-259.01—requires insurers offer UI/UIM 'in limits not less than the liability limits for bodily injury or death contained within the policy.'" *Dorazio v. Allstate Fire & Cas. Ins. Co*., 2025 WL 1652003, at *1–2 (D. Ariz. June 11, 2025) (citing A.R.S. § 20-259.01(A), (B)). "UIM coverage applies when an insured's total damages exceed all applicable liability limits, subject to any valid limitations the insurer imposes." *Travelers Prop. Cas. Ins. Co. v. Gee*, 747 F. Supp. 3d 1242, 1249 (D. Ariz. 2024) (citing *American Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 193 (2012). "[A]ny 'exceptions to [UIM] coverage not permitted by the [UMA] are void.'" *Id*. (quoting *id*.).

- 5 -

The UMA authorizes insurers to limit UM or UIM coverage. *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 (Ariz. 2012). Subsection (H) allows insurers to prevent their insured from "stacking" any available UM or UIM coverages, which occurs when an insured "attempts to combine the coverages of a single policy or multiple policies issued by a single insurer" to increase the amount of coverage available to the insured. *Rashid v. State Farm Mut. Auto. Ins. Co.*, 787 P.2d 1066, 1068 n.2 (Ariz. 1990). When an insured seeks to combine the coverages of multiple polices it is referred to as "inter-policy stacking," whereas when an insured seeks to combine coverages within a single policy, it is referred to as "intra-policy stacking." *Id.*

In *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 532 P.3d 1145 (2023), the Arizona Supreme Court accepted a certified question from this Court: "[d]oes A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different [UIM] coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?" *Id.* at 1146; *see also Franklin v. CSAA Gen. Ins. Co.*, 2022 WL 16631090, at *2 (D. Ariz. Nov. 2, 2022) (certifying the question to the Arizona Supreme Court). *Franklin* noted that "insurers seeking to prevent insureds from stacking [UI/UIM] coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking." *Id.* at 1147. Subsection (H) provides, in relevant part, that:

> If multiple policies or coverages purchased by one insured on different vehicles apply to an accident or claim, ***the insurer may limit the coverage so that only one policy or coverage, selected by the insured, shall be applicable to any one accident***. If the policy does not contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection, within thirty days after the insurer receives notice of an accident, the insurer shall notify the insured in writing of the insured's right to select one policy or coverage.

A.R.S. § 20-259.01(H).

"This language means an insurer can prohibit stacking only if it has satisfied two requirements." *Dorazio*, 2025 WL 1652003, at *1–2. "First, the insurer must 'expressly and plainly limit stacking in the policy.' Second, the insurer must 'inform[ ] the insured

- 6 -

of their "right to select one policy or coverage" either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident.' " *Id.* (citing *Franklin*, 532 P.3d at 1148). "If an insurer does not satisfy both requirements, the insurer cannot limit stacking." *Id.*

Defendant argues that its policy includes proper anti-stacking language and that it informs Plaintiff of its right to select only one "policy or coverage." (Doc. 9 at 7). Plaintiff argues that Defendant did not expressly and plainly limit stacking within the Policy and did not satisfy the explicit notice requirement, and has therefore failed to comply § 20-259.01(H) despite the statute's plain language. (Doc. 10 at 2). The Court will address each prong of the two-part *Franklin* test in turn.

**A.   Express and Plain Limitation of Stacking in the Policy.**

Defendant argues that the following part of its policy expressly and plainly limits stacking: "if you have purchased, from us or a company affiliated with us, other policies or coverages on other automobiles that also apply to a claim for injury, ***only one policy or coverage including this policy or coverage shall apply to that claim.***" (Doc. 9 at 7) (emphasis added). Plaintiff argues that this sections is "entirely unclear" (Doc. 10 at 4), but the Court is not persuaded.

Arizona courts construe the meaning of contract provisions from the language the parties used and in view of all surrounding circumstances. *Smith v. Melson, Inc.*, 659 P.2d 1264, 1266 (Ariz. 1983). Words will be giving their ordinary meaning and courts should interpret the contract "so as to make it effective and reasonable." *Phelps Dodge Corp. v. Brown*, 540 P.2d 651, 653 (Ariz. 1975). "It is a general rule that the construction of a contract is a question for the court when its terms are plain and unambiguous on its face." *Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018) (citing *Shattuck v. Precision Toyota, Inc.*, 566 P.2d 1332, 1334 (Ariz. 1977)). "[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it [beyond] its plain and ordinary meaning or add something

to the contract which the parties have not put there." *Ratchford v. Watford Specialty Ins. Co.*, 659 F. Supp. 3d 1032, 1038 (D. Ariz. 2023) (quoting *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 396 P.2d 20, 23 (1964). If a contract is ambiguous, it presents a question of fact inappropriate for resolution on a motion to dismiss. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018).

The Policy plainly states that "only one policy or coverage including this policy or coverage shall apply[.]" (Doc. 9-1 at 34). This is so, even if Plaintiff were to purchase "other policies or coverages on other automobiles that also apply to a claim for injury[.]" (*Id.*) The Court finds these terms are plain and unambiguous as written. So, the Policy expressly and plainly limits the stacking of multiple coverages. *See Dorazio*, 2025 WL 1652003, at 2.

### B.     Proper Notice

Next, Defendant "must satisfy [the UMA's] notice requirement to inform '[Plaintiff of her] right to select one policy or coverage,' either in the policy itself or in writing 'within thirty days after [Defendant] receives notice of [the] accident.' " *Franklin*, 532 P.3d at 1148 (quoting A.R.S. § 20-259.01(H)). Defendant argues that its Policy informed Plaintiff of her right to select the applicable policy or coverage in line with the UMA. (*See* Doc. 9 at 7). Plaintiff argues that "nowhere in the Policy does Defendant Auto-Owners include the mandated notice of the 'insured's right to select one policy or coverage' to apply to an accident." (Doc. 10 at 5).

Yet, the Policy states that "only one policy or coverage including this policy or coverage shall apply to that claim. ***You shall select the policy or coverage that applies***." (Doc. 9-1 at 34) (emphasis added). By its plain and unambiguous terms, the Policy informs Plaintiff of her right to "select the policy or coverage that applies" in the Policy itself. (*Id.*) The Policy therefore limits the stacking of multiple policies or coverages under Section 20-259.01(H). *See Dorazio*, 2025 WL 1652003, at 2.

### IV.     Conclusion

The Policy (1) expressly and plainly limits stacking and (2) informs Plaintiff of her

right to select one policy or coverage in the policy itself. So, Defendant's Policy properly limits the stacking of Plaintiff's multiple coverages. *Franklin*, 532 P.3d at 1148; *Dorazio*, 2025 WL 1652003, at *1–2. Because Plaintiff is not entitled to stack the UIM limits of the Policy, the Court will dismiss her claim for a declaration of entitlement to UIM proceeds under the policy. (Doc. 1-1 at ¶¶ 45–51). The Court will also partially dismiss Plaintiff's breach of contract claim as it is partially premised on Defendant's alleged failure to allow Plaintiff to stack her four different coverages for up to $400,000.00 in total UIM coverage.[3] *See Haak v. Dishon*, 2018 WL 4565838, at *5 (D. Ariz. Sept. 24, 2018) (partially dismissing the plaintiff's breach of contract claim). Any part of Plaintiff's claim which is premised on Defendant's failure to allow her to stack multiple coverages would fail here.

The Court should generally provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court will not allow Plaintiff to amend her Complaint (Doc. 1-1) because these claims cannot be saved by an amendment. *See Manzarek*, 519 F.3d at 1031.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 9) is **GRANTED**. Plaintiff's first claim for declaratory relief (Doc. 1-1 at ¶¶ 45-51) is **DISMISSED** and Plaintiff's second claim for breach of contract (*Id.* at ¶¶ 52–60) is **partially DISMISSED** to the extent she relies on the stacking of her coverages to support her breach claim.

Dated this 21st day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge

---

[3] Plaintiff specifically alleges that she "is entitled to stack the UIM coverage up to $400,000 for her bodily injuries and damages" and that Defendant "breached the Policy . . . through its refusal to tender all UIM benefits owed to Plaintiff." (Doc. 1-1 at ¶¶ 55, 57). However, part of Plaintiff's breach claim may still proceed as it is premised on Defendant's failure to pay anything more than $25,000.00 for her injuries when the policy allows for recovery of $100,000.00 per person and $300,000.00 per accident. (*See id.* at ¶¶ 21, 56–59).